## GAMMINO v. INHABITANTS OF TOWN OF DEDHAM.

(Circuit Court of Appeals, First Circuit.   October 22, 1908.)

### No. 751.

**1.** CONTRACTS (§ 198*)—CONSTRUCTION—CONTRACT FOR CONSTRUCTION OF SEWER.

A contract with a town to furnish all materials and labor required to complete two sections of a sewer according to specifications, which stated approximate quantities of earth and rock excavation required, and provided for the payment of different sums per cubic yard for each and for excavations at different depths, also provided that "the above quantities are not guaranteed, and the commissioners reserve the right to increase or diminish the same within 25 per cent." *Held,* that under such provision the price named for each kind of excavation governed only to the extent of the quantity of such kind stated, with a variation of 25 per cent., and that for the amount of either kind required in excess of that to complete the sections the contractor was entitled to recover on a quantum meruit, although the quantity of excavation as a whole did not vary 25 per cent. from the total stated.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 871; Dec. Dig. § 198.*]

**2.** CONTRACTS (§ 213*)—CONSTRUCTION—CONTRACT FOR CONSTRUCTION OF SEWER—FORFEITURE FOR DELAY IN COMPLETION.

Where, in the execution of the contract, the contractor was obliged to excavate many times the quantity of rock estimated in the contract, a provision that, in case of his failure to complete the work within the time fixed, he should "be liable to a forfeiture of $10 per day for each and every day which shall be required to fully complete the contract," did not apply to delay caused by such excess of rock excavation above the quantity specified plus 25 per cent.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 974; Dec. Dig. § 213.*]

**3.** EVIDENCE (§ 399*)—PAROL EVIDENCE TO VARY WRITING.

A contractor for the construction of a sewer was required at his peril to acquaint himself with the character of the ground to be excavated before signing the contract, and conversations between the parties in respect thereto which took place previously are not admissible to vary the written contract.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1772–1777; Dec. Dig. § 399.*]

**4.** EVIDENCE (§ 399*)—PAROL EVIDENCE TO VARY WRITING—EVIDENCE OF CUSTOM.

Under a contract for the construction of a sewer, which provided that "the contractor shall make no claim for damages or allowances due to any delays caused by the encountering of any pipes or underground structures, or obstruction of work due to the removal, repair, or renewal of such work by the proper authorities," the contractor is not entitled to recover for delay or expense due to the encountering of water and gas pipes lying in or beside the sewer trench, because they were not shown on plans which were made a part of the contract, nor on proof of a custom or usage to lay such pipes along the sides of the street, instead of near the center, where they were found, and that they were therefore unusual and not contemplated by such provision.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1772–1777; Dec. Dig. § 399.*]

---

5. CONTRACTS (§ 284*)—CONTRACT FOR CONSTRUCTION OF SEWER—PROVISION FOR DETERMINATION OF DISPUTES BY ENGINEER.

A provision of a contract for the construction of a sewer that, in case of any dispute arising, the engineer shall have the right to settle the same and to interpret the meaning of the specifications and contract, and that his decisions shall be final, does not deprive the parties of their right to a judicial construction of the contract after it has been performed, so far as such construction involves matters of law relating to the amount of compensation to which the contractor is entitled.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1326–1338; Dec. Dig. § 284.*]

In Error to the Circuit Court of the United States for the District of Massachusetts.

George Fred Williams (James A. Halloran, on the brief), for plaintiff in error.

James E. Cotter and Joseph P. Fagan, for defendant in error.

Before PUTMAN, Circuit Judge, and ALDRICH and BROWN, District Judges.

BROWN, District Judge. This is a writ of error for review of the rulings of the Circuit Court in an action of contract, in which a verdict was directed for the defendant town.

By the written contract between the town, by its commissioners, and the contractor, Gammino, it was agreed that the contractor should furnish all material and perform all labor required upon two sections, A and D, of a sewer.

The location, extent, and general character of the trenching and other work to be done was shown upon plans attached to the contract. Approximate quantities of work to be done were set forth in the specifications, including, among other things, earth excavation and rock excavation at various depths. The contractor was to be paid different sums per cubic yard for earth and rock excavation, and different sums for excavation at different depths. Following the detailed statement of approximate quantities was this language:

"The above quantities are not guaranteed, and the commissioners reserve the right to increase or diminish the same within 25 per cent. Upon the quantities above given bids will be compared. These quantities will be a part of any contract made for the prosecution of this work, and when referred to in such contract include each and every part of the same."

We are of the opinion that, upon a construction of the contract which gives due effect to this provision, the prices named are to prevail only to the extent of the quantities named, with a 25 per cent. margin of variation. The contract fails to fix a price for quantities in excess of this.

The amount of rock excavation necessary to complete the trenches was much more than 25 per cent. in excess of the approximate quantities. The brief of the plaintiff in error states that in section A the rock removed was 18 times the amount of the estimated rock, and in section D 43 times.

It clearly appears from the contract that the work contemplated was the entire trenching and construction work of sections A and D. Therefore it cannot be said that an excess of rock excavation over that mentioned in the estimates was extra work, which required special orders from the engineer. It was work in excess of that for which prices were agreed upon, but not work in excess of what was required for the completion of the sewer sections.

Looking at the contract with due regard to its principal object, as well as to the specific provisions, it seems reasonable to hold that it was the intention of the parties, in case the quantities exceeded the estimates by more than 25 per cent., that the contractor might claim on quantum meruit for the excess, and might show that for this excess he was fairly entitled to more than the contract price. On the other hand, the town would be allowed to maintain that on quantum meruit for the excess the contractor was entitled to less than the contract prices.

The limitation to a 25 per cent. variation was inserted for a purpose. Except for this provision, the prices named would prevail for all the work done, even if it should turn out that the actual proportions of earth and rock excavation were substantially different from what was contemplated. An attempt to hold the contractor strictly to the prices named for an amount of work substantially different from what was contemplated might result in hardship so great as to show mutual mistake concerning the subject-matter of the contract, and thus endanger the entire contract.

A more reasonable view is that both parties expected that the proportions of earth and rock excavation would be substantially as set forth, but provided for a variation of 25 per cent. and agreed on prices accordingly, leaving the matter of further possible variations to be adjusted upon the principles of quantum meruit. A clause of this character, read as a provision for future contingencies, should be regarded as inserted for the benefit of both parties.

We are of the opinion that there was error in confining the plaintiff to the prices named for the excess of rock excavation over and above that stated in the estimates of quantities plus 25 per cent.

The auditor found that the sum total of earth and rock excavation did not exceed by 25 per cent. the sum total of the number of cubic yards stated in the estimate for earth and rock excavation, and therefore that the prices named in the contract applied to all rock excavation. Counsel for defendant in error contends that this is in accordance with the proper construction of the contract.

We are of the opinion that this is erroneous, and that it not only violates the terms of the contract, but leads to an unreasonable result.

The different portions of the work are distributed into different classes or quantities because of differences in kind and of cost. These "quantities" embrace such different classes, as pipes of different sizes, figured by linear foot, manholes, lampshafts, chimneys, concrete, foundations, timber cradles, etc., as well as earth and rock excavation.

It is manifest that the 25 per cent. was not intended to be figured upon the sum of all the quantities, because it is impossible to add

together linear feet of pipe, number of manholes and lampshafts, and cubic yards of earth and rock excavation.

The defendant's contention that the right reserved to increase or diminish the quantities within 25 per cent. applied to the quantities as a whole is unreasonable, because the parts or units are incapable of addition. An attempt to figure 25 per cent. of the sum of 10 pounds, 10 linear feet, and 10 cubic feet would present the same difficulty.

Nor did the auditor in fact follow the principle which he adopted; i. e., that the right to vary by 25 per cent. applied to the quantities as a whole. On the contrary, he picked out but two of the quantities, the earth excavation and the rock excavation, and, while he arrived at a sum that could be expressed in cubic yards, the result has no reasonable significance, and involves the fallacious assumption that in the minds of the contracting parties a cubic yard is a cubic yard, whether it is earth, worth from 30 cents to $3 per yard to excavate, or rock, worth from $2 to $7 per yard to excavate.

When the contractor says, "In order to complete the trench I was obliged to excavate several hundred cubic yards of rock more than was estimated," it is no reply to say, "But you were relieved from excavating a corresponding number of cubic yards of earth." The number of yards may balance, but the labor and cost, which are the material things, do not balance.

In connection with the claim of the contractor for rock excavation in excess of the estimated quantity plus 25 per cent., we have to consider the clauses of the contract which provide for a forfeiture by the contractor of the sum of $10 per day for failure to complete the work within the specified time.

We are of the opinion that, upon a proper construction of the whole contract, the forfeiture or penalty does not apply to the period of delay caused to the contractor by rock excavation necessary for the completion of the trench, but in excess of the amount named in the "quantities" plus 25 per cent.

The work which the contractor agrees to perform within the stipulated time is substantially such work as is within the express provisions of the contract concerning payment, and it would be most unreasonable to charge the contractor for delay during a period when he was engaged in carrying out the main purpose of the contract, and when the delay was due, not to his fault, but to the fact that there was error in the estimates of the proportions of earth and rock excavation.

From our conclusion that the contractor is entitled to claim quantum meruit for excess of rock excavation, it follows that during such period as he is necessarily engaged in excavating the excess he is relieved from the penalty. It was error to charge against the contractor the sum of $10 per day during this period.

This follows, whether the provision for a forfeiture of $10 per day be regarded as an agreement for liquidated damages or for a strict forfeiture. In connection with the provision that, if the contractor fails to complete the work within a specified time, "he shall be liable to a forfeiture of $10 per day for each and every day which shall be required to fully complete the contract," etc., the town

contends that the agreement is for liquidated damages; the contractor, that it is for a strict forfeiture. The determination of this question, however, requires a careful consideration of Van Buren v. Digges, 11 How. 461–476, 13 L. Ed. 771, Clark v. Barnard, 108 U. S. 436–455,[1] 27 L. Ed. 780, Sun Printing Company v. Moore, 183 U. S. 642, 22 Sup. Ct. 240, 46 L. Ed. 366, United States v. Bethlehem Steel Company, 205 U. S. 105, 27 Sup. Ct. 450, 51 L. Ed. 731, and other decisions touching the same topic. Furthermore, the application of these authorities may vary with a different state of proof.

Therefore, without determining this question, and without precluding its consideration by the Circuit Court upon a new trial, we content ourselves with holding that, whether the contract provides for liquidated damages or for a penalty, there was error in charging the contractor for delay, when delay was due, not to his fault, but to error in the estimates.

From what precedes, it follows that judgment must be reversed; but for the purposes of a new trial it may be expedient to consider some of the other points argued.

The plaintiff attempted to introduce conversations between himself and the sewer commissioners, immediately preceding the signing of the contract, relating to the character of the ground through which the sewer was to be constructed.

The excluded evidence was to the effect that the contractor stated to the commissioners that he had been over the ground, and thought it likely to be wet and hard, and for that reason he preferred not to sign the contract, but to forfeit the deposit he had made with his bid, and that thereupon two of the commissioners, in the presence of the third, assured him to the contrary, and that the work was easy, dry, and light.

This evidence was properly excluded. The contract itself speaks expressly upon this subject. The contractor was required to acquaint himself with particulars of this kind at his own risk. The written contract is drawn to preclude contentions of this familiar kind. By signing it the plaintiff precluded himself from contending, directly or indirectly, that it was agreed that the soil was dry and easy to work. Moreover, the evidence clearly shows that before signing the contract the plaintiff made an examination of the ground. The rejection of this evidence is fully supported by the familiar rule which forbids variation of a written contract by proof of antecedent oral conversations upon the same subject-matter.

The plaintiff in error also assigns as error the rejection of certain evidence as to customs and usages. The plaintiff claimed that he had suffered loss from delay, and had been put to expense from the fact that in excavating he encountered in section A about 4,300 feet of water and gas pipes lying in, on the side of, and paralleling the trench, and that these pipes were not shown on the plans. He also claimed that on section D there were 1,650 feet of such pipes. He contended that these obstructions were not contemplated by the parties, made the necessary work substantially different from that for which prices were agreed, excused him from delay in the com-

[1] 2 Sup. Ct. 878.

pletion of the sewer sections, and put him to extra expense, for which he claimed additional compensation. The defendant contended that these claims were precluded by the express terms of the contract. The following provisions of the specification are referred to:

"Care of Underground Structures, Water and Gas Pipes, Street Drains, and Street Railway Tracks. The contractor must take care of all retaining walls, foundation walls, buildings, water and gas pipes, and of all drains and pipes and other structures of whatever nature which he encounters in the trench work and in the laying of the sewers. He shall properly support and take care of all such pipes, and properly notify the proper authorities when such pipes or drains are encountered, and shall make all necessary arrangements with the proper authorities for their support, repair, removal, or renewal, as may be necessary in the prosecution of his work. The contractor will not be required under these specifications to relay any water pipes or gas pipes in new locations, or to remove such pipes from the trench when such relocations are required, but shall properly guard and protect such pipes until such removal or relocation has been made by the proper authorities. In all cases the contractor shall make no claims for damages or allowance due to any delays caused by the encountering of any pipes or underground structures or obstruction of work due to the removal, repair, or renewal of such work by the proper authorities. All such pipe crossing and work shall be at his expense and in his care, and he shall save the town harmless from any liability in this respect as against the pipes of the Dedham Water Company and the Dedham & Hyde Park Gas & Electric Light Company, except that the contractor will be paid for concrete ordered by the engineer to support drains."

The plaintiff contends that this clause applies only to ordinary cross-pipes, and to such pipes as are ordinarily encountered in trenching, but does not apply to pipes lying in the trench location, or closely parallel thereto, of such extent as those found, drawing attention to the following clause in support of this construction: "All such pipe crossing and work shall be at his expense and in his care," etc. He further contends that the provision, "All bidders must visit the ground in person and thoroughly acquaint themselves with all particulars in regard to the character and nature of the work," had no reference to an unusual obstruction of this character.

The testimony of Samuel M. Grey, a civil engineer, was offered to show that:

First. It was a custom to lay water pipes on one side of a street, gas pipes on the other, and sewer pipes in the middle of the street.

Second. It was a custom to describe on construction plans any underground obstructions of an unusual character connected with gas and water pipes which run in the line of the trench, or to state the fact if the obstructions are unknown.

Third. It was a custom, when such obstructions are not so shown on the plan or indicated as uncertain, to treat and pay for any work done thereon as extra work.

Fourth. The actual cost of trench work is increased by the presence of such unusual obstructions in the trench.

The plaintiff also offered to prove the extent to which these unusual obstructions existed in the trenches, how much his work was delayed thereby, and how much the cost of the work was increased. We are of the opinion that there was no error in the rejection of this evidence. The contract is clearly expressed in terms of ordi-

nary speech, and the evidence was not offered to explain, but to restrict, the meaning of these terms. The contractor expressly assumed the risk of encountering pipes and of expense to him in consequence. The contract names specifically the pipes of the Dedham Water Company and the Dedham & Hyde Park Gas & Electric Light Company, and covers broadly all pipes that may be encountered in the work, whether their presence was known or unknown. The intention of the parties is fully expressed, and such expression cannot be contradicted or modified by extraneous proof.

As a matter of interpretation it is apparent that this provision was inserted for the protection of the town against all claims arising from the encountering of pipes, and the evidence that pipes were found in unusual places or in unusual quantities, or that the contractor was put to greater expense than he expected, has no bearing upon the proper construction of the terms used by the parties.

The contention is in effect that the contract should be given a meaning narrower than that to be found in its terms, merely for the reason that the conditions found were unexpected by the contractor and put him to unexpected expense. It assumes that the parties were contracting entirely on the basis of known and previously ascertained conditions; an assumption which is not justified by the text of the contract or by the nature of the undertaking. Furthermore, the result would be to throw upon the town the expense arising from unforeseen obstructions when it is manifest that it was the intention of the parties, as expressed in the contract, that the risk should fall on the contractor.

The contention is also made that, as the obstructions encountered were not shown upon the plans, the contractor was entitled to assume that there were no unusual obstructions. The fact that the plans were a part of the contract and show no obstructions clearly cannot amount to a representation that there are no obstructions, when the text of the contract expressly provides for obstructions. The plans did not purport to show obstructions, and, though made a part of the contract, are not the part which deals with the question of obstructions.

We are further of the opinion that, even if evidence of usage or custom were admissible, the evidence offered was insufficient and incompetent. There was no attempt to show that terms such as are used in this contract had acquired by usage any particular or restricted meaning. The questions as to usage were too general, and without limitation to time or place, or to circumstances similar to those involved in this case; and it is further apparent that the word "custom" was used, not in the sense of a uniform and invariable practice, but merely in the sense of the usual or ordinary way. The contentions that there was a custom to lay water and gas pipes on the sides of the street, and another custom to have the plans show water and gas pipes when laid otherwise, are of doubtful consistency. If the first custom exists, there would appear to be hardly room for the second. The fact that the conditions found to exist when the ground was opened were merely unusual or unexpected would be altogether insufficient to make applicable to this case the principle

that parties who contract upon a subject-matter concerning which an established custom prevails proceed with a tacit assumption of such usage. The case is of the class to which the rule is applicable that where the terms of the contract are plain the right of one party to it cannot be taken away by proof of custom. Boruszweski v. Middlesex, 186 Mass. 589–593, 72 N. E. 250; Brown v. Foster, 113 Mass. 136, 18 Am. Rep. 463. The language of the opinion in Seitz v. Brewers Refrigerating Co., 141 U. S. 517, 12 Sup. Ct. 48, 35 L. Ed. 837, is applicable:

"Whether the written contract fully expressed the terms of the agreement was a question for the court, and since it was in this instance complete and perfect on its face, without ambiguity, and embracing the whole subject-matter, it obviously could not be determined to be less comprehensive than it was."

The town further insists upon the provision of the contract:

"In case of any dispute arising the engineer shall have the right to settle the same, and he shall have the right to determine and interpret the meaning of these specifications and contract to be made under them, and all decisions of the engineer shall be final."

The jurisdiction of the engineer relates to disputes arising in the performance of the work which might prevent the work from progressing unless determined on the spot. The questions now presented are those which arose after the completion of the contract. The clause cannot be interpreted so as to deprive the parties of their rights to a judicial construction of the contract, so far as such construction involves matters of law relating to the present right of the plaintiff to maintain suit, and relating to the question whether the plaintiff has received such compensation as he was legally entitled to under the provisions of the contract and under the evidence as to the acts of the parties not in terms fully covered by the express provisions of the contract.

The judgment and verdict are set aside, and the case is remanded to the Circuit Court for further proceedings not inconsistent with this opinion, and the plaintiff in error recovers his costs of appeal.