DRAINAGE DISTRICT No. 5 OF LONOKE COUNTY *v.* KOCHTITZKY.

Opinion delivered December 20, 1920.

1. DRAINS—JURISDICTION OF EQUITY TO RESTRAIN EXPENDITURE OF FUNDS.—A complaint against a drainage district by a contractor alleging that the limited funds of the district were deposited in a bank, that the plaintiff had a lien on them, and that the commissioners of the district were about to expend the funds in payment of other obligations of the district, with prayer that the commissioners be restrained from paying out such funds, and that a lien be declared in plaintiff's favor for the amount of his debt, *held* to state a cause of action in equity.

2. DRAINS — COMPENSATION OF CONTRACTOR — CHANGE OF PLANS.—
Where a contract for construction of certain drainage ditches
was plain and unambiguous, and no authority was given to
change the plans as to the width of a lateral ditch, because such
a change could not be accommodated to the capacity of the ma-
chine which the contractor had provided, the district had no au-
thority to make such a change; and where it undertook to do so,
and the contractor constructed the ditch according to the orig-
inal plans, he was entitled to compensation accordingly.

3. DRAINS — EFFECT OF CONTRACTOR CONSENTING TO CHANGE.—The
fact that a ditch contractor consented to certain other changes
in the original ditch plans will not preclude him from recover-
ing compensation for opening up a ditch to the width originally
stipulated, though the commissioners undertook to reduce the
width of a lateral ditch from twenty to sixteen feet, with which
he could not comply on account of the width of his dredge boat.

4. DRAINS—AUTHORITY OF ENGINEER TO CHANGE SPECIFICATIONS.—
Where a contract for the digging of a ditch stipulated that the
engineer should be the sole arbitrator to determine the meaning
of the contract and the sufficiency of its performance, the en-
gineer was not authorized to change the contract by interpreta-
tations or otherwise.

5. COMPROMISE AND SETTLEMENT—EFFECT OF ACCEPTING CHECK.—
Where a ditch contractor accepted a check for the amount ad-
mitted to be due him, with the express understanding that its
acceptance should not bar his right to assert a claim for further
compensation, such settlement was not final so as to debar him
from asserting claim for an additional amount due him.

Appeal from Lonoke Chancery Court; *J. E. Mar-
tineau,* Chancellor; affirmed.

*Chas. A. Walls,* for appellant.

1. It was error to overrule the motion to transfer
the cause to the law court, as the chancery court was
without jurisdiction. The cause of action did not involve
a long or complicated account, but a simple question of
fact easily settled in a court of law by a few simple in-
structions. No fraud was alleged in obtaining a final
settlement nor mistake. Plaintiff had a complete and
adequate remedy at law and the question of fact should
have been properly submitted to a jury. It is not true
that there was no other way than a chancery action to
reach the funds. No allegation was made that the dis-

trict was insolvent, or that it had insufficient funds, or that its uncollected assessment of benefits had been pledged or exhausted, and a court of law could have reached the funds on hand to the credit of the district in due time in the same manner as the chancery court. The court should have sustained the motion to transfer the case to the law court in order that the question of facts should be tried by a jury.

2. The acceptance of the checks by the appellee was a full settlement between the district and appellee, and he is estopped from claiming a larger sum under the terms of the contract. These checks and the written statements attached to the final estimate of the engineer bear the marks of finality and were intended as a final and complete settlement between the parties. In addition, a release in writing was given by the board of commissioners wherein it was recited that the contract had been wholly performed by appellee and he and his sureties were released from all liabilities and the bond given fully discharged. Accepting the checks, executing the receipts in full payment of final estimate and obtaining the release, show conclusively that the contract was treated as finally terminated. The checks and receipts and releases were all introduced by appellant and relied on by them and there was no attempt by appellee to prove fraud or mistake, and they were conclusive evidence of what their purport was on their face, a final settlement. 93 Ark. 389; 83 *Id.* 368; 96 *Id.* 408. The *release* was final and conclusive except for fraud or mistake. 21 Ark. 357.

3. No fraud or mistake is alleged to have been made in the settlement by appellee, and the receipts and vouchers are *prima facie* correct, and parol testimony was incompetent to vary or contradict them. 79 Ark. 256; 93 *Id.* 388; 88 *Id.* 371. The receipts and releases show a complete and final settlement.

4. Appellee waived any right he might have had to recover for excessive yardage by agreeing to the changes submitted by the engineer and by performing his contract

in accordance with the changes made, and the right to change the form of the ditch by the engineer is expressly reserved in the contract by section 8. The court erred in its finding as to the material facts of the case, as the engineer was the final arbiter as to all disputes and misunderstandings. Section 22 of the contract. 27 Ark. 271 is not in point.

5. The undisputed proof shows that the changes made in the ditch were for the benefit of the contractor.

6. There is no evidence to sustain the finding that any extra machinery was put on or that appellee was forced to change the design of his boat to construct lateral C, and the theory upon which the court allowed plaintiff to recover was erroneous.

7. If the contractor should have been allowed anything for extra excavation, then the district should have credit for lowering the grade line of the lateral for which the contractor was paid $840.

*Trimble & Trimble,* for appellee.

1. It was not error to overrule the motion to transfer to law. Plaintiff alleges, and it is not denied, that the district had no other funds than those on deposit in the bank and plaintiff had no adequate remedy at law. 143 Ark. 446.

2. Appellee accepted the check in full payment of the amount due him; the final estimates were paid, and he drew down the 20 per cent. retained percentage on the contract, and obtained a release and discharge of his official bondsmen, treating the contract as terminated, and he is bound by his actions. Appellant is estopped from pleading the check paid as a final settlement. 188 S. W. 573.

3. Under the evidence it was not incumbent on appellee to plead fraud or estoppel. 54 Ark. 289; 62 *Id.* 262; 76 *Id.* 551; 75 *Id.* 181; 62 *Id.* 431. He who seeks equity must do equity.

4. There is nothing to show where appellee reaped any advantage by reason of the release, and there is

nothing to show that appellant made any concession by reason of appellee's protest, and there is no claim on the part of appellant that it did not owe at least the full amount that was paid appellee at the time of the execution of the check, the disputed items being left to be determined by the court.

5. Appellant accepted and agreed to the changes in the contract. The check, receipt and release were a final settlement, and the decree is correct.

McCULLOCH, C. J. Appellant is, as its name implies, a drainage district organized under general statutes for the purpose of constructing certain drains or ditches in Lonoke County, and a contract was duly entered into with appellee to construct the improvement. It consisted of an extensive system of drains in a large area in Lonoke County. After the completion of the improvement appellee instituted this action to recover a sum of money alleged to be due and unpaid on a part of the construction work.

The contract to do the work was let to appellee on the yardage price, that is to say, at a price per cubic yard for the dirt removed in constructing the ditches, which varied in size from sixteen to forty feet at the bottom. There was a main ditch and a number of laterals designated on the plans and specifications by letters of the alphabet. The present controversy relates to a change in lateral B, which, according to the original plans and specifications, was to be twenty feet in width at the bottom. During the progress of the work the engineer of the district changed the plans so as to provide for a ditch of only sixteen feet in width along lateral B. Authority to make this change is claimed on behalf of appellant under a clause in the contract which reads as follows:

"The right is reserved by the board to change the form of the ditch, if the engineer shall so decide, to accommodate any machine which it is desired to be used on

the job, provided no change is made which would lessen the efficiency of the ditches.''

The contention of appellee, which forms the basis of this suit, is that his machinery in operation at the time this change was made was adapted to the construction of ditches not less than twenty feet in width at the bottom, and that there was no authority on the part of the engineer or the board of commissioners of the district to make the change under the clause of the contract quoted above. Appellee alleged in his complaint, and introduced proof which tended to show, that at the time this change was made by the engineer the construction of the ditch along lateral B was then in process, and that it was expensive to change his equipment so as to provide dredging machinery which would operate in a 16-foot channel, and that he was therefore compelled, notwithstanding the attempted change in the contract, to continue with the construction of a 20-foot ditch according to the minimum capacity of his machine. The excess yardage of dirt taken from the 20-foot ditch over and above the 16-foot ditch was approximately 13,000 cubic feet, and appellee sues for the price on this amount for which he has received no compensation. Suit was instituted in the chancery court, and was tried in that court and resulted in a decree in appellee's favor awarding him compensation at the contract price for the removal of 11,500 cubic feet of dirt, amounting to the sum of $1,115.50.

Appellee moved to transfer the cause to the circuit court, but this was overruled, and it is contended now that the chancellor was without jurisdiction and should have transferred the cause to the circuit court. The complaint contains appropriate allegations to the effect that the limited amount of funds of the district was deposited in a certain bank, that appellee has a lien on said funds and that the commissioners were about to expend the sum in payment of other obligations of the district and the prayer of the complaint was that the board of com-

missioners be restrained from paying out said funds and that a lien be declared in appellee's favor for the amount of his debt. Under a recent decision of the court upon similar state of facts, this was sufficient to give the chancery court jurisdiction. *Bayou Meto Drainage Dist.* v. *Chapline,* 143 Ark. 446.

It is also contended that the court erred in its finding as to the material facts of the case. The chancellor heard the cause on the testimony of the appellee and of the engineer of the district, who both testified with the plans and specifications and a map of the district before them. There are slight conflicts in the testimony of the two witnesses, but many of the material facts are undisputed. The contract contemplated that the construction work should be done by dredge boats and the contract called for two of these boats to be furnished by appellee. The ditches were, as before stated, of various widths, and the testimony showed that appellee provided two boats, one for use in constructing the extra width ditches and the other in constructing the narrower ditches. The minimum capacity of the smaller boat of the two was, as before stated, a 20-foot ditch and some of the lateral ditches were to be constructed only sixteen feet wide, but appellee testified that he proceeded to construct the ditches twenty feet wide according to the minimum capacity of his dredge boat, and only claimed compensation for the amount named in the contract.

There were certain changes made in the contract with appellee's consent, or rather without any objection on his part, but his testimony is sufficient to establish the fact that he made objections to the change in regard to lateral B. The contract is plain and unambiguous with respect to the power to change the contract, and under the facts, as established by the testimony of appellee, there was no authority to change the plans as to the width of lateral B, for the reason that such a change could not be accommodated to the capacity of the machine which appellant had provided to do the work. The

court was correct, therefore, in finding that the facts
with respect to the size of the boat were such that ap-
pellant had no authority under the contract to change
the plans and that appellee was entitled to compensa-
tion for the construction of the ditch according to the
original plans.    Appellee had no other means of com-
plying with the contract according to the proof adduced,
except by using the boat which had been provided for
that purpose, and it would have cost more to furnish the
additional equipment than the price of the excess yard-
age would amount to.   Appellee was required by the exi-
gencies of the situation to continue the performance of
the contract, and, since he was thus compelled by those
circumstances to make the ditch of the width specified
in the original contract, he is entitled to compensation
on that basis, notwithstanding the fact that the engineer
changed the plans from a 20-foot ditch to a 16-foot ditch.

It is argued that appellee is not entitled to this com-
pensation for the reason that certain changes in the con-
struction of the ditches were made for the benefit of ap-
pellee, and that he is more than compensated for the ex-
cess yardage in the construction of lateral B by an in-
crease of the amount of excavation caused by changes
in other parts of the improvement.   The testimony does
not show that the various changes were made at the
same time or were dependent upon each other.   Those
that appellee consented to, or rather acquiesced in, were
made independently of the change in the width of the
ditch along lateral B, and the fact that appellee consented
to the other changes does not afford grounds for deny-
ing him the compensation which he is entitled to under
the original contract.   In other words, each of the
changes in the contract must stand alone, and, since ap-
pellee did not consent to the change of the plans in re-
gard to lateral B and was forced under the circum-
stances to dig the ditch according to the original plans,
he is entitled to that compensation, notwithstanding the
fact that the other changes might have rendered it less

burdensome to him. It is not within the province of the court to balance up the benefits and detriments by reason of the various changes which were made in the contract independently of each other. Appellee testified that none of the changes were made at his suggestion or for his benefit, but that he merely acquiesced in certain changes against which he did not care to protest. There is testimony to the effect that the grade line of lateral B was changed so that it increased appellee's compensation which it is contended should reduce to that extent the amount of the price of the extra yardage. There is, however, no substantial dispute as to the amount of excess yardage for which the chancellor allowed compensation, and, that being true, appellee is entitled to this regardless of any other changes in the contract either to his detriment or to his benefit.

The contract contains the following clause with respect to the power of the engineer:

"It is mutually covenanted and agreed by and between the said parties hereto that, to prevent disputes or misunderstandings between them in relation to the stipulations and provisions contained in this agreement, or as to the true intent and meaning thereof, and of the plans and specifications hereunto attached, and of the other plans pertaining thereto, or as to the performance of said contract by either of said parties and for the speedy settlement of such disputes as may occur, the engineer personally, who may be such at the time shall be, and he is hereby made, constituted and appointed sole arbitrator to finally decide all such questions and matters."

It is contended that this clause of the contract gave the engineer the authority to interpret the contract and to decide all questions thereunder which would be conclusive upon the parties, and that the decision of the engineer has been against appellee's contention in regard to his price for the excess yardage. The contract is plain and unambiguous concerning the power to change

the plans, and, as before stated, the testimony clearly establishes the fact that the change with respect to lateral B did not conform to the capacity of the equipment then in operation. The engineer had the authority to settle disputed questions of fact arising under the contract or to interpret ambiguities in the contract which were dependent upon issues of fact, but he was not clothed with authority to change the contract except in the particulars mentioned, and therefore could not change it by interpretations. The rights of the parties were fixed by the contract, and not by the decisions of the engineer. *Williams* v. *Carden's Bottom Levee Dist.*, 100 Ark. 166. There is a distinction between the power of the engineer with respect to interpretation of the plans and specifications and as to the contract itself. The former is supposed to be the work of the engineer, and it is proper in case of dispute to refer such interpretation to him, but, as before stated, the rights of the parties are fixed by the contract itself, and it is a question for the courts, and not for the engineer, to determine what those rights are, except to the extent that the parties may leave to the engineer the settlement of questions of fact relating to the quantity, quality or manner of the construction of the work to be done under the contract.

Lastly, it is insisted that there was a final settlement between the parties, which was accepted by appellee, and is binding on him. The testimony discloses the fact that when the parties came together for the final settlement the compensation for excess yardage in the construction of lateral B was denied by the board of commissioners, and a check was drawn for the amount of the balance due to appellee exclusive of the price of this yardage, and that he received the check into his possession and kept it about a half an hour, but returned to the meeting of the commissioners, and an agreement was made that the acceptance and collection of the check should not bar his right to assert claim for the price of the excess yardage. This agreement between the par-

ties prevented the final settlement from becoming binding on appellee, so as to bar him from asserting a claim for the additional amount.

The decree is correct, and the same is affirmed.