KYBURZ et al., Plaintiffs v. STATE, Defendant

(108 N.W.2d 645)

(File No. 9821. Opinion filed April 19, 1961)

**Vernon Williams,** Aberdeen, for Plaintiff.

**A. C. Miller,** Atty. Gen., **Walter Weygint,** Asst. Atty. Gen., for Defendant.

ROBERTS, J.  This is an original action in this court instituted under the provisions of SDC 1960 Supp. 33.0604 to enforce payment of a  claim against the State.  The action arises out of a building contract for the construction of a dormitory at Northern State Teachers College, Aberdeen. The contract price was $181,800. The State Engineer claiming that plaintiffs failed to furnish 150 bedsprings specifically called for under the contract directed the deduction of $1,687.50 from the contract price. The claim for that amount which plaintiffs now seek to enforce was rejected by the State Auditor. The cause was referred to a referee, Honorable Philo Hall, who after hearing the evi-

dence found that plaintiffs are entitled to judgment.

Plaintiffs assert that there is no provision in the contract requiring them to furnish bedsprings and that furnishings are not a part of the building constructed. Counsel for defendant insist that these furnishings are shown in the plans; that under the terms of the contract it was within the authority of the State Engineer to determine the meaning and intent of any portion of the plans and specifications or drawings when in dispute; and that his determination of the controversy in favor of the State is binding and conclusive.

The contract executed on August 24, 1957, by the parties recited that the advertisement for bids, proposal and plans and specifications were made a part of the contract by reference. The advertisement called for bids "for the labor and materials to construct a Girls Dormitory Building." Other material parts of the contract are as follows:

> "The Contractor shall perform everything required to be performed and shall provide and furnish all of the labor, materials, necessary tools, expendable equipment, and all utility and transportation services required to perform and complete in a workmanlike manner all the work required for the General Contract in connection with the construction of the Girls' Dormitory Project of the Owner, all in strict accordance with the Plans and Specifications including any and all addenda, prepared by The Architect under the general charge and supervision of the State Engineer, acting, and in these contract documents referred to, as the State Engineer, which plans and specifications are made a part of this contract, and in strict compliance with the Contractor's proposal and the other contract documents herein mentioned which are a part of this contract; and the contractor shall do every thing required by this contract and the other documents constituting a part hereof."

The specifications made a part of the contract contain, among other things, the following provisions:

"The Contractor shall and will, in good workmanlike manner, do and perform all work and furnish all supplies and materials, machinery, equipment, facilities and means, except as herein otherwise expressly specified, necessary or proper to perform and complete all the work required by this contract, within the time herein specified, in accordance with the provisions of this contract and said specifications and in accordance with the plans and drawings of the work covered by this contract and any and all supplemental plans and drawings, and in accordance with the directions of the (Architect) (Engineer) as given from time to time during the progress of the work.   * *

"The State Engineer shall give all orders and directions contemplated under this contract and specifications relative to the execution of the work. The State Engineer shall determine the amount, quality, acceptability, and fitness of the several kinds of work and materials which are to be paid for under this contract and shall decide all questions which may arise in relation to said work and the construction thereof. The State Engineer estimates and decisions shall be final and conclusive, except as herein otherwise expressly provided. In case any question shall arise between the parties thereto relative to said contract or specification, the determination or decision of the State Engineer' shall be a condition precedent to the right of the Contractor to receive any money or payment for work under this contract affected in any manner or to any extent by such question. The State Engineer shall decide the meaning and intent of any portion of the specifications and of

any plans or drawings where the same may be found obscure or be in dispute."

The Attorney General excepted to the findings and conclusions of the referee. The challenged findings read as follows:

"16. That said contract does not have any provision relating to furniture or bedsprings except that on Page 15 of the plans, (Exhibit No. 4) there is a drawing of a spring and mattress on the bunk, and notations as follows: 'Simmons L-320, springs, size 3/3; 6' 4" spring size,' and 'Simmons L-320, spring size 3/3,' and said drawing did not have such items circled in red at the time of execution of the contract.[1] That the same blueprint or plan, (Exhibit No. 4, Page 15) had other items shown thereon which defendant does not contend plaintiffs were required to furnish, such items being shown to designate size or location, including lighting fixtures, a laundry sink, and radiation, and such items were furnished by other contractors.

"17. That there is no provision, specification or requirement for the plaintiffs to furnish the springs in question at any place in said contract; that the springs are not a part of the structure constructed under said contract, and are removable."

■ The rule appears to be well established that parties to a building or construction contract may designate an engineer or other person to determine questions related to its execution and that the parties are bound by his determination of matters within the scope of his authority and when made in good faith. McGuire v. City of Rapid City, 6 Dak. 346, 43 N.W. 706, 5 L.R.A. 752;

[1] The exhibit was not identically the same as at the time of the execution of the contract. To determine the real meaning of the exhibit the subsequent changes are pointed out.

Seim v. Krause, 13 S.D. 530, 83 N.W. 583; Baker v. City Council of City of La Moure, 21 N.D. 140, 129 N.W. 464; see also annotations in 54 A.L.R. 1255, 110 A.L.R. 137 and 137 A.L.R. 530. This, however, does not mean that the engineer may change the terms of the contract. Guarantee Title & Trust Co. v. Willis, 38 Ariz. 33, 297 P. 445. In Tomlinson v. Ashland County, 170 Wis. 58, 173 N.W. 300, 303, the court had under consideration a building contract which gave an architect the power to make final decisions as to the true construction and meaning of the drawings and specifications. The court held that the contractors were not bound to furnish at their own expense as a part of their contract obligation the sand and labor for necessary inside and outside filling. The court said: "The power of the architects under the contract was unquestionably binding when deciding questions arising as to the meaning of the provisions of the plans and specifications concerning all work that was within the contract, but they were not given the power expressly, nor may we give it to them by implication, to either add to or take away from the contractual rights or liabilities of either party under the contract itself. The power to construe and define the intent and meaning of plans and specifications made a part of a contract is one thing, and may properly be, as it was in this instance, left to arbiters selected by the parties; the power to construe the contract itself and to determine what is within and what without such contract is a different and independent question, and belongs primarily to the courts." See also to the same effect Aetna Indemnity Co. v. Waters, 110 Md. 673, 73 A. 712; Gammino v. Inhabitants of Town of Dedham, 1 Cir., 164 F. 593; Drainage Dist. No. 5 v. Kochtitzky, 146 Ark. 494, 226 S.W. 172.

■ We are convinced that the challenged findings are amply sustained by the record. It is not contended that the articles in controversy would have become a permanent accession to the realty and an integral part of the dormitory which plaintiffs contracted to build. There are references in the drawing of a "typical room plan" to Simmons springs. The location and size of other furnishings

and also fixtures are shown in the drawing as indicated in the findings of the referee. When the entire contract is considered with reference to what the plaintiffs bound themselves to perform, the drawing cannot reasonably be construed to require the plaintiffs to furnish the articles in question which were not designed to become a part of the building. The deduction of the cost of these articles from the contract price being based upon a mistaken view of the law does not bar the right of the plaintiffs to recover.

Judgment will be entered for the plaintiffs in the sum of $1.687.50 with interest from the date of the rejection of their claim by the State Auditor.

All the Judges concur.