**EICKHOF CONSTRUCTION COMPANY,**
**a Corporation, Plaintiff and Respondent,**

**v.**

**CITY OF GRAFTON, a Municipal Corpora-**
**tion, Defendant and Appellant.**

**No. 8072.**

Supreme Court of North Dakota.

Sept. 20, 1963.

Dahl, Dahl & Greenagel, Grafton, for defendant and appellant.

Degnan, Hager, McElroy & Lamb, Grand Forks, for plaintiff and respondent.

ERICKSTAD, Judge.

In this case the plaintiff, Eickhof Construction Company, sued the defendant,

City of Grafton, basing its action on the terms of a written construction contract with the City, alleging that $11,435.50, plus interest, was due and owing it for pit run gravel which it had furnished the City in connection with the construction of a water treatment and water distribution plant. The defendant interposed an answer denying this obligation, asserting it had paid the contract in full, that $518.00 of this payment was for pit run gravel furnished in the project which its engineer had approved, and that it was liable only for the gravel which its engineer had approved.

As a second defense, the defendant denied any obligation to pay for additional pit run gravel but asserted that if it were obligated to pay for any more gravel, the maximum it would be obligated for would be 551 cubic yards, based on a certain formula.

The Honorable Albert Lundberg, District Judge of Walsh County, took oral testimony in the case on July 14, 1958, the parties having stipulated to try the case before the court without a jury. Affidavits were subsequently filed with the court by both parties. On June 5, 1961, the judge rendered his memorandum decision, which was a holding in favor of the plaintiff, awarding it the sum of $7,000, plus interest.

The defendant has appealed from the judgment rendered on June 21, 1961, which was pursuant to findings of fact, conclusions of law, and order for judgment dated June 19, 1961, all being consistent with the said decision. A trial de novo is demanded in the Supreme Court.

As for the facts, the trial court, in the memorandum decision, had this to say:

"But, after spending days—and many nights—attempting to clarify the facts and the issues, they still lack clarity, and we are forced to the conclusion that it is vain to hope that order and clarity will emerge from a muddle in which there never was clarity or order."

■ This court may order a new trial of an action, even where a trial de novo in this court is demanded, if it deems such course necessary to the accomplishment of justice. Sec. 28–27–32, N.D.C.C.

At the close of the hearing on July 14, 1958, the trial court invited the parties to submit additional evidence in affidavit form. The parties thereafter did submit affidavits, but this apparently did not materially aid the trial court. As the parties were given the opportunity to present their evidence without restriction or limitation before the trial court, it would not appear likely that they could make a better record if a new trial were now granted. We have concluded, therefore, that to return the case for a new trial would result only in added delay.

As this case was commenced by summons and complaint dated October 25, 1956, was presented to the trial court on July 14, 1958, was decided by the trial court on June 5, 1961, and was argued in the Supreme Court in the April term for 1963, it seems imperative that a concluding decision be rendered on the basis of the record that is before us, without further delay.

In this case the trial court had before it certain stipulated facts, certain affidavits, and the testimony taken at the hearing.

Stipulated are the facts that the petitioner furnished 3,415.3 cubic yards of pit run gravel and that if the petitioner is entitled to recover for more gravel than that for which it has already been paid, the recovery shall be on the basis of $3.50 per cubic yard.

■ One of the defendant's major specifications of error is that "The Trial Court erred in finding that the plaintiff had proved in an adequate manner the proper use of gravel in accordance with the specifications."

A review of the evidence indicates that neither the contractor nor the City kept accurate records of the amount of pit run gravel used in each phase of the contract. Only the total amount furnished is certain. This total is certain only because it is stipulated to be in the amount of 3,415.3 cubic yards.

Section 10 of that part of Exhibit 1 entitled "Information for Bidders," reads:

*"Approximate Quantities:* In cases where any part or all of the bidding is to be received on a unit price basis, the quantities are approximate only and each bidder will be required to make his own estimates of amounts and to calculate his unit price bid accordingly. Proposal quantities will be used to determine low bid." Sec. 10, Information for Bidders, Exhibit 1, p. 21.

It is argued that the latter provision gives notice to the bidders that the estimates are not binding and that the City intends to exercise control over the materials used during the course of construction.

This control, it is argued, was given the city in Section 8 of that part of Exhibit 1 which is entitled "Miscellaneous Stipulations" and which reads:

*"Interpretation of Specifications:* Should any question arise as to the intent and meaning of the specifications herein contained, the Engineer shall define the same and his decision shall be final." Sec. 8, Miscellaneous Stipulations, Exhibit 1, p. 28.

Section 3 of said "Miscellaneous Stipulations" reads:

*"Disputes:* Any difference or disputes between the inspectors and the Contractor shall be immediately referred to the Engineer whose decision shall be final." Sec. 3, Miscellaneous Stipulations, Exhibit 1, p. 28.

The City contends that under the aforesaid Section 8, it is liable only for as much gravel as its engineer approved; and, in this respect, it states that the engineer approved only 148 cubic yards of gravel.

The contractor, however, contends that the engineer approved all 3,415.3 cubic yards of gravel. This is denied by the engineer, and his testimony is supported by the fact that he, as engineer, consistently refused during the course of construction to approve the claims for payment for gravel used.

Although the contractor alleges that approval was given, he contends that if this is not proven, approval was not necessary. His argument is that the specifications indicate that gravel used as a bed for pipe was not to be included in the cost of the pipe. Here he refers us to that part of a note in Exhibit 1 under the title "Water Distribution System," which reads as follows:

"In every proposal item containing cast iron pipe, or alternate asbestos cement pipe, in Schedules 1, 2 and 3, the unit price bid shall include the cost of placing backfill material, except that the cost of pit run gravel in place is included under the Item Number in each Proposal entitled, Pit Run Gravel Fill." Water Distribution System, Exhibit 1, p. 124.

The contractor believes that this clause required him to include his labor costs in figuring the cost of the pipe in place, but that it provides for extra payment at the bid price of gravel for whatever pit run gravel was required.

His further argument is that if the terms of the contract are ambiguous, the trial court was permitted to adopt the interpretation of the contract most favorable to the party who did not draft the contract. He cites Ring v. Minnesota, 263 Minn. 391, 116 N.W.2d 582.

The trial court in the instant case apparently concluded that the contract was ambiguous and, following the reasoning of

the aforesaid Minnesota case, adopted the interpretation most favorable to the contractor, who was the party who did not draft the instrument.

The City, on the other hand, refers us to other sections of the contract which, it contends, indicate that the gravel for the bed of the pipe was to be supplied as a part of the bid price of the pipe.

In this case, the alternate bid for asbestos cement pipe was accepted by the City.

The City refers us to the following portions of the contract.

"*TRENCHING:* The specifications covering trenching, testing and backfilling for Asbestos-Cement shall be the same as for Cast Iron pipe except that the trench shall be excavated at least three (3) inches deeper than the grade at the bottom of the barrel of the pipe and backfill up to a horizontal plane through the lower third point of the diameter of the pipe with pit run gravel thoroughly tamped into place around the pipe in order to form a uniform bearing for the pipe. All pit run gravel shall pass a one-and-one-half (1½) inch square mesh screen." Asbestos-Cement Water Mains, Exhibit 1, p. 49.

"*(c) Pipe Foundation in Good Soil:* The trench, unless otherwise specified, shall have a flat bottom conforming to the grade to which the pipe is to be laid. The pipe shall be laid on sound soil cut true and even, so that the barrel of the pipe will have a bearing for its full length.

"*(d) Correcting Faulty Grade:* Any part of the trench excavated below grade shall be corrected with approved material, thoroughly compacted.

"*(e) Pipe Foundation in Poor Soil:* When the bottom uncovered at subgrade is soft and in the opinion of the Engineer cannot support the pipe, a further depth and/or width shall be excavated and refilled to the pipe foundation grade with approved material thoroughly compacted, or other approved means shall be adopted to assure a firm foundation for the pipe for which extra compensation will be allowed." Excavation and Preparation of Trench, Exhibit 1, p. 34.

On a review of all the provisions referred to us by both parties, we conclude that there is no ambiguity in this contract relating to the use and payment for pit run gravel. Our view is that the cost of the pit run gravel in place as a bed for the pipe is to be paid for pursuant to the item in the proposal entitled "Pit Run Gravel Fill," at $3.50 per cubic yard. As the respondent failed to keep an accurate record of the pit run gravel used in the various phases of the project and as the defendant appellant has offered evidence through a certain formula indicating that 551.82 cubic yards would be the amount of gravel necessary to bed the pipe pursuant to the specifications, we find that the plaintiff respondent should have received payment for 551.82 cubic yards of gravel as a bed for the pipe at $3.50 per cubic yard or the total sum of $1,931.37.

Parts of the contract, other than that which relates to pit run gravel for bedding the pipe, appear to provide for payment for pit run gravel for other uses without approval by the engineer, but the evidence submitted is insufficient to support a specific finding thereon.

Other parts of the contract relating to pit run gravel require approval by the city engineer before the City is obligated for payment thereof. Here the contractor has failed to sustain the burden of proving that approval was obtained.

In arriving at this conclusion we have not ignored the contention of the City that under Section 8 of Exhibit 1, which gives the engineer the authority to define the intent and meaning of the specifications and makes his decision final, the decision of the engineer in the instant case, not to pay for

any gravel not approved by him, is conclusive there being no proof of fraud or of such gross mistake on his part as would necessarily imply bad faith or a failure to exercise an honest judgment. Rather, we have found that his decision was in the nature of construing the contract instead of being merely an interpretation of the intent and meaning of the specifications.

A case which discusses the issues with which we are confronted here and attempts to distinguish the difference between defining the meaning of the specifications and construing the contract is the case of Kyburz v. State, S.D., 108 N.W.2d 645.

"The rule appears to be well established that parties to a building or construction contract may designate an engineer or other person to determine questions related to its execution and that the parties are bound by his determination of matters within the scope of his authority and when made in good faith. McGuire v. City of Rapid City, 6 Dak. 346, 43 N.W. 706, 5 L.R.A. 752; Seim v. Krause, 13 S.D. 530, 83 N.W. 583; Baker v. City Council of City of La Moure, 21 N.D. 140, 129 N.W. 464; see also annotations in 54 A.L.R. 1255, 110 A.L.R. 137 and 137 A.L.R. 530. This, however, does not mean that the engineer may change the terms of the contract. Guarantee Title & Trust Co. v. Willis, 38 Ariz. 33, 297 P. 445. In Tomlinson v. Ashland County, 170 Wis. 58, 173 N.W. 300, 303, the court had under consideration a building contract which gave an architect the power to make final decisions as to the true construction and meaning of the drawings and specifications. The court held that the contractors were not bound to furnish at their own expense as a part of their contract obligation the sand and labor for necessary inside and outside filling. The court said: 'The power of the architects under the contract was unquestionably binding when deciding questions arising as to the meaning of the provisions of the plans and specifi-

cations concerning all work that was within the contract, but they were not given the power expressly, nor may we give it to them by implication, to either add to or take away from the contractual rights or liabilities of either party under the contract itself. The power to construe and define the intent and meaning of plans and specifications made a part of a contract is one thing, and may properly be, as it was in this instance, left to arbiters selected by the parties; the power to construe the contract itself and to determine what is within and what without such contract is a different and independent question, and belongs primarily to the courts.' See also to the same effect Aetna Indemnity Co v. Waters, 110 Md. 673, 73 A. 712; Gammino v. Inhabitants of Town of Dedham, 1 Cir., 164 F. 593; Drainage Dist. No. 5 [of Lonoke County] v. Kochtitzky, 146 Ark. 494, 226 S.W. 172." Kyburz v. State, S.D., 108 N.W.2d 645.

Realizing the difficulties involved in attempting to distinguish between the meaning of specifications on the one hand and construing the contract on the other, we have come to the conclusion that the engineer in the instant case, in refusing to approve payment for pit run gravel used as a bed for the pipe, was going beyond his authority to define the intent and meaning of the specifications and was, in effect, attempting to construe the contract, which authority, we believe, is not given the engineer under the terms of the contract specified herein.

At this point it should be noted that the respondent asserts that:

" 'The findings of the trial Court are entitled to appreciable weight.' Braaten v. Brenna, N.D., 63 N.W.2d 302; Gunsch v. Gunsch, N.D., 67 N.W.2d 311; Shong v. Farmers' & Merchants' State Bank, N.D., 70 N.W.2d 907."

The argument is that we should sustain the judgment of the trial court for this rea-

son. In this connection our court has previously said:

"* * * Upon an appeal from a case tried to a jury, our review of the facts is limited to a consideration of whether there is substantial evidence to sustain the verdict. If there is such evidence, we are bound by the verdict.

"On the other hand, the case with respect to the deed was an action to quiet title, a court case. Upon an appeal in such a case, the appellant, if he demands it, as he did here, is entitled to a trial de novo, upon all issues. Upon such trial the trial judge's findings, while entitled to appreciable weight, are not binding on this court. Upon the appeal in the action to quiet title it was our duty to try the facts upon the record presented." In re Hendricks' Estate, N.D., 110 N.W.2d 417

█ The trial court was the trier of the facts in this case; and, thus, on appeal the appellant was entitled to demand a trial de novo of all the issues. As a demand for a trial de novo was made, we have reviewed all the facts upon the record presented and find that the respondent contractor has failed to sustain the burden of proving that it was entitled to payment for more than the amount of gravel necessary to bed the pipe pursuant to the plans and specifications. Although the trial court's findings are entitled to appreciable weight, this court, in a trial de novo, is not bound thereby.

The judgment of the trial court is, therefore, modified, and the case is remanded with instructions that judgment be rendered for the plaintiff respondent in the sum of $1,931.37 with interest thereon from November 7, 1955, at the rate of four per cent per annum.

MORRIS, C. J., and BURKE, TEIGEN and STRUTZ, JJ., concur.