HARTFORD ACCIDENT & INDEMNITY CO., Plaintiff
v. STATE, Defendant

(187 N.W.2d 663)

(File No. 10733. Opinion filed June 10, 1971)

**Woods, Fuller, Shultz & Smith,** and **Timothy J. Nimick,** Sioux Falls, for plaintiff.

**Gordon Mydland,** Atty. Gen., **C. J. Kelly,** Asst. Atty. Gen., Pierre, for defendant.

BIEGELMEIER, Judge.

Chapter 411 of the 1961 Session Laws appropriated $1,000,000 for the construction of a Science Building at the then State College of Agriculture and Mechanic Arts. Pursuant thereto the State of South Dakota by its Board of Regents, on October 22, 1962, entered into a valid general construction contract with Kuipers Construction Company to construct the building for $528,600. Kuipers furnished the required Performance Bond which it executed as principal, the Hartford Accident and Indemnity Company as surety and the State as obligee.

Kuipers commenced performance of its contract and as construction progressed filed vouchers for progress payments as provided in the contract; diverse payments were made thereon less retained percentages provided for in the contract. Before completion of the Science Building and performance of its contract, Kuipers defaulted on the contract, which default was acknowledged by its Board of Directors on October 12, 1964. The Board in turn called upon Hartford to perform the balance of the contract pursuant to the conditions of its bond. Hartford acknowledged its obligation under the Performance Bond and on October 12, 1964, Kuipers "in consideration of the Hartford * * * making payment of supplier and/or sub contractor accounts and completion costs on (the) Science Building" assigned, transferred and set over unto Hartford "all contract proceeds and balances due or to become due, including any and all extras and retainages on the contract for construction of Science Building". This assignment was accepted in writing by the state acting through the Board of Regents on October 16, 1964.

After the performance of the obligations of such contract by the original contractor and Hartford and acceptance of such building as being constructed in accordance with the contract, all of such "retained percentages" except the sum of $5,475.18 were paid by the Board of Regents to Hartford. Hartford filed a claim with the State Auditor for $5,475.18 which was the balance of the money due under the full contract price of $528,600. The State Auditor rejected this

claim and Hartford brought an original action in this court as provided by SDCL 15-25-2 and SDCL 21-32-10 et seq.

If there were no other facts involved, it is clear that having performed the contract Hartford would be entitled to the $5,475.18[1] Kyburz v. State, 79 S.D. 114, 108 N.W.2d 645. However, the stipulation states further facts upon which the state relies to defeat Hartford's claim. They are that except for the sum of $5,475.18, the disposition of which is hereinafter described, the full contract price of $528,600 has been expended from state funds and paid either to Kuipers or to Hartford; that on or about February 26, 1965, the United States filed a Notice of Levy of Taxes allegedly owed by Kuipers for FICA taxes assessed against Kuipers on the following dates and in the following amounts:

| | |
|---|---|
| 2-26-65 | $1,384.76 |
| 2-26-65 | 2,578.24 |
| 2- 5-65 | 1,490.81 |
| 9-17-65 | 290.40; |

that in addition to said assessments and levies for FICA taxes, the United States also assessed taxes under Form 940 on the following date and in the following amount:

| | |
|---|---|
| 3-11-65 | $ 294.40; |

that the total of said assessments was $6,038.61.

On or about April 7, 1966, the state paid the United States $5,475.18 and the taxes noted and the Notice of Levy thereof were released. Hartford objected to this payment, bookkeepingly made by the state out of the appropriation for construction of the Science Building, and to the deduction

---

1. Defendant's brief agrees with this as it states "plaintiff * * * finished completion of the project. In this position, under our laws, there can be no question that upon completion of the required construction, the plaintiff was entitled to collect any payments due Kuipers under the contract." More accurately stated, plaintiff had been assigned all of the "contract proceeds * * * and retainages" theretofore earned by Kuipers and was owner thereof and, of course, was owner in its own right of any "contract proceeds" and "retainages" earned and retained from work it did to complete the contract.

of that sum from the balances and retained percentages due it. Hartford did not at any time authorize or consent thereto. It further appears that on October 12, 1964, the date of the assignment from Kuipers to Hartford, and October 16, 1964, the date of the state's acceptance of the assignment, there were no tax liens or notices thereof filed; that the date of the filing of the first tax lien by the United States was February 26, 1965.[2]

Such are the facts as stipulated. The October 12, 1964 assignment by Kuipers was a valid transfer of all of the proceeds and balances due or to become due on the contract including the amounts retained under Kuipers' performance. The record does not show what construction was done by Hartford nor the amount retained from their progress payments; such sums, if any, would be due to Hartford not Kuipers. The acceptance by the state of the assignment recognized and approved it.

■■ The nature and extent of a taxpayer's interest in property on the date of filing of the notice of the tax lien must be determined by state law.[3] The right of the government to assert a tax lien cannot rise above the rights of the taxpayer. United States v. Winnett, 1947, 9 Cir., 165 F.2d 149; Equitable Life Assurance Society of United States v. United States, 1964, 1 Cir., 331 F.2d 29.

These principles were applied by the court in Monroe Banking and Trust Company v. Allen, 1968, D.C., 286 F.Supp.

---

2. After the action was commenced it appeared there were no disputed questions of fact. The parties entered into an agreement and stipulation of the facts, leaving only questions of law to be determined by this court. See Alexander v. State, 74 S.D. 593, 57 N.W.2d 121, and Kyburz v. State, 79 S.D. 114, 108 N.W.2d 645. They submitted the action on that record, simultaneous written briefs and oral argument. The facts stated herein are those in the stipulation and the attached exhibits.

3. United States v. Creamer Industries, Inc., 1965, 5 Cir., 349 F.2d 625, cert. den., 382 U.S. 957, 86 S.Ct. 434, 15 L.Ed.2d 361, citing United States v. Bess, 1958, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135; Aquilino v. United States, 1960, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365. See also General Motors Acceptance Corporation v. Wall, 1965, D.C., 239 F.Supp. 433.

201, where one Allen, the taxpayer, had made assignments of the proceeds of his subcontract to a bank. The court wrote:

"The government bases its claim for priority upon §§ 6321-6323 inclusive, of the Internal Revenue Code of 1954. § 6321, which is basic here, provides that one's failure to pay any tax will result in a lien upon 'all property and rights to property * * * belonging to such person'."

After stating the government's claim that the assignments were not effective and though the bank may have gained some interest in the proceeds, it did not qualify as a mortgagee or purchaser under § 6323(a), nor was it protected as a pledge under § 6323(c), it continued:

"Thus, Allen was admittedly without the right to compel payment from Building Service, and he personally had no 'property' or 'rights to property' in the proceeds of the subcontracts. * * *

"Whether or not the government is entitled to priority in any amount depends entirely upon the effectiveness of the assignments to vest full title in the Bank to the proceeds of the subcontracts. The answer to this question must be determined by the law of this state."

The court held the assignments were valid and as there were no property rights remaining in Allen after the dates of the assignments, "the government's claim must fail."

█ The assignment being valid under state law, Kuipers had no claim against the state after the date of the assignment to Hartford and so had no "property" or "rights to property" under § 6321, Internal Revenue Code, supra, upon which the claimed tax liens could attach. Conversely, the state did not owe any money to Kuipers at the time the

tax lien was filed, and it therefore had no right or authority to pay the $5,475.18 to anyone but Hartford.[4]

The state contends there was or is no appropriation (remaining?) to pay this sum to Hartford, claiming it disbursed this balance to the United States. That claim is untenable; so far as Hartford's claim is concerned, that appropriation was for the construction of a building; Hartford completed it; the disbursement to the United States was improper and cannot defeat the Hartford claim.[5] Judgment will be entered for plaintiff against the state for the $5,475.18.

All the Judges concur.

---

4. Section 3 of Ch. 411, S.L. 1961, directed "the funds herein appropriated shall be paid out on warrants drawn by the State Auditor on vouchers approved by the State Engineer and the Board of Regents." The stipulated facts do not indicate why the Auditor made the payment to the United States. Hartford finished the construction, it would be the party to sign the voucher and, as it claimed the money at all times, it must be assumed it did not assign it to the government.

5. The parties' briefs discuss priority of "liens"; Hartford had no lien on the funds retained from Kuipers' performance, it had title thereto under the assignment. The state argues it is the duty of Hartford to make the United States a party and having failed to do so the action should be dismissed. We see no merit in this claim. The state paid the money to the United States; Hartford had no part in that diversion of state funds. We mention these claims to indicate they were not overlooked.