(70 App. Div. 232.)

## ISAACS v. DAWSON et al.

(Supreme Court, Appellate Division, First Department.  March 21, 1902.)

1. CONTRACT—BUILDING—CONSTRUCTION—"GROUND FLOOR"—EXTRA WORK.

Plaintiff, a subcontractor, agreed for a gross sum to "furnish and set best approved terra cotta arch blocks on all floors except the ground floor," conformably to the specifications of a certain building having a cellar, a basement, and seven stories above.  The specifications did not contemplate any such blocks in the cellar floor.  The basement floor was on the level of one of the streets on which the building fronted, and was repeatedly referred to in the specifications as the "basement or ground floor."  He refused to furnish and set such blocks in the basement floor as a part of his contract, but subsequently did furnish and set them by express direction of defendant, who had contracted to complete the entire building.  Held, that the furnishing and setting such blocks in the basement floor was extra work, for which plaintiff was entitled to recover in addition to the sum specified in his contract.

2. SAME—DISPUTE—DECISION OF ARCHITECT.

Where the building contract of a subcontractor provides that, should any dispute arise respecting the true meaning of the drawings or specifications, it shall be decided by the architect, such proviso does not cover a dispute as to whether certain work required by the specifications is included in the subcontract.

3. SAME—PROVISIONS FOR EXTRA WORK—CONSTRUCTION.

Where a subcontract for a building required the subcontractor to omit work called for in the contract or do extra work when so directed by the owner or architects, and in such case provided for a deduction from the contract price or extra pay, as the case might be, such provision did not preclude the contractor from doing extra work.

4. SAME—EVIDENCE.

Where a subcontractor has contracted to do only a specified part of certain work called for by the building specifications, in an action to recover for work as extra, which was called for by the specifications, but expressly excepted from his subcontract, it was not reversible error to exclude evidence that he had the specifications when he made his contract.

Van Brunt, P. J., and Ingraham, J., dissenting.

Appeal from trial term, New York county.

Action by Gustavus Isaacs against John Dawson and another. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal.  Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

David Thornton, for appellants.

Frank M. Avery, for respondent.

LAUGHLIN, J.  This appeal presents but a single question, and that relates to the construction of a building subcontract.  The defendants were partners engaged in business as builders.  On the 28th day of February, 1890, they contracted in the firm name of Dawson & Archer with the city of New York to erect the new Criminal Court Building on premises bounded by Center, Elm, Franklin, and White streets.  The defendants, by contract in writing, on the 26th day of March, 1890, sublet part of this work to the plaintiff.  The plaintiff's agreement, so far as material to the question presented, was to "do

all the work hereinafter mentioned in and on the building to be erected on Elm, Center, Franklin, and White streets, in the city of New York, for the mayor, aldermen, and commonalty of the city of New York, viz.: Fireproof work. Furnish and set between the iron beams on all floors (except ground floors), also in top-story ceilings and roof, best approved terra cotta arch blocks 8 inches deep. The skewback blocks against the beams are to be made to accurately fit the beams, all to be made thoroughly wet, and each voussoir laid in a full bed of Portland cement on both beds and ends at one operation. All to be laid true to a line, the crowns to be keyed with tiles made to fit the different spans. Furnish and set all necessary centers for the proper construction of these arches, and in no case are the centers to be struck until the work is thoroughly set and dried. The roof blocks are to be of porous terra cotta for the proper fastening of the tile, all to be set in Portland cement." The terra cotta partitions throughout the building were also to be constructed by the plaintiff, but he was not to set the frames for door or window openings in the partition, or do any concreting. The description of the work, so far as it was embraced within the defendants' contract, followed the description thereof in the defendants' contract with the city and in the city's specifications. The plaintiff was to perform the work included in his contract, and furnish all the materials, for the gross sum of $37,500, payable in monthly installments of 90 per cent. of the value of the work done, immediately upon the receipt by defendants of their monthly payments from the city, but in no case later than 60 days after the end of the month for which the monthly installment was to be paid. The remaining 10 per cent. was to be paid within six months after the completion of plaintiff's contract work. The plaintiff, before receiving his pay, was required to obtain a certificate from the architect to the effect that the work has been done and material furnished "in conformity with the said plans and specifications" and are such as is required thereby. There was no express reference in the plaintiff's contract to the specifications that made a part of the defendants' contract with the city; but, after describing the work as indicated, it provided that the same should be done "agreeably and in conformity to the above specifications and to the drawings made by Thom and Wilson and Schaarschmidt, architects, in a good, workmanlike, and substantial manner, to the satisfaction and under the direction of the said architects, to be testified by a writing or certificate under the hand of the said architects." Although the contract, in its reference to specifications, is not very definite, the trial justice instructed the jury that it related to the city's specifications, and that may be assumed. The plaintiff testified that he refused to set terra cotta arch blocks between the iron beams of the basement floor on the ground that that work was not included in his contract, but that he subsequently did the work by the express direction of the defendants. The question is whether that was extra work. The plaintiff has recovered on that theory. The appellants maintain that the cellar floor and other floors under the basement are "ground floors," excepted from the plaintiff's contract. The plans and specifications for the new Criminal Building provided for a cellar, a basement above,

and seven stories above the basement. The cellar floor was to be concreted four inches thick. Neither the plans, specifications, nor any contract provided for, required, or contemplated that there were to be any iron beams or terra cotta arch blocks under it. The basement floor was the first floor to be supported by iron beams, and the plans indicated that terra cotta arch blocks were to be set between those iron beams; but the specification expressly excepted the "ground floor" from that work, as did also defendants' contract with the city, as well as plaintiff's contract with defendants. The specifications clearly indicated that by the "ground floor" is meant the basement floor. The basement floor opened on Elm street, where it rested on the solid earth, but at Center street it was supported by pillars, and between the two streets beams extended supporting it. At Center street the basement floor was reached by stairs. The clause relating to concreting provides that the cellar and all other rooms "below the basement or ground floor" shall be concreted. The basement floor is the lowest floor below which there are any rooms, and is therefore here used as synonymous with "ground floor." Again, the clause relating to cut stone requires the use of Long Meadow stone above the "basement or ground floor" and cut granite for the basement story "from the grade of the sidewalk up and including the first story sill course." The plans and specifications call for a staircase in the Elm street vestibule from the basement to the first story above, which staircase was not to extend below the basement. The specifications speak of this staircase as extending from the "basement or ground floor." We think the plaintiff's contract did not require him to furnish or set terra cotta arch blocks between the iron beams of the basement floor. That floor was expressly excepted from his work. No other construction will give force or effect to the express intention of the parties to except some floor where there were iron beams and where such work would otherwise have been required. The other portions of the specifications clearly identify the basement floor as the "ground floor" referred to in the contract. It was clearly a ground floor, since at Elm street it was virtually on a level with the street. The conflict on this point between the specifications and defendants' contract on the one hand and the plans on the other indicate a mistake. Whether it was originally contemplated to set terra cotta arch blocks between the iron beams on the basement floor, and there was a subsequent change in such intention, which resulted in that work being excepted from the specifications and form of contract required of bidders, but not from the plans, or whether the mistake arose on a misapprehension as to the floor to which the exception relates, is wholly immaterial to the present inquiry. Nor were the defendants aided by that clause of plaintiff's contract which provides: "Should any dispute arise respecting the true construction or meaning of the said drawings or specifications, the same shall be decided by said architects, and their decision shall be final and conclusive." The dispute here arose over the construction of the contract, and that was not intended to be left to the architect. The provision in the city's specifications to the effect that the specifications, plans, and drawings are intended to mutually explain each other, and that anything mentioned or referred to

in one and not shown on the other, and vice versa, are to be deemed to be included in both, has no application to the plaintiff's contract. If the controversy arose between the defendants, who contracted for the entire work, and the city, a different question would be presented, as to which it is unnecessary to express opinion. The plaintiff's contract was for the performance of only that part of the work covered by the defendants' contract which is expressly embraced therein. The plans and specifications were undoubtedly to govern as to the manner in which the plaintiff should do this work, but they could not extend his liability to other work not included in his contract. The provisions of the city's specifications with reference to the formalities to be observed to authorize a claim for extra work are not binding on the plaintiff. They were designed to protect the city against the general contractor.

The defendants controverted the plaintiff's testimony to the effect that he refused to do the work on the basement floor, and that he was subsequently directed to perform it by them on an understanding which reserved his right to be paid therefor. This question of fact was submitted to the jury, and by their verdict it has been resolved in favor of the plaintiff. The provision of the contract requiring plaintiff to deviate from the contract by omitting work or doing extra work when directed by the commissioner of public works or the architects, and in such case providing for deduction from the contract price or extra pay, as the case might be, did not preclude the defendants themselves from doing this extra work.

We think that the refusal of the court to allow the defendants to show that plaintiff had the city's plans and specifications when he contracted with them is not reversible error. As has been seen, he was only bound by those plans and specifications in so far as he contracted to execute them. If, as claimed by the defendants, it was the intention of the parties to include the basement floor, then the defendants should have pleaded the facts, and asked for the reformation of their contract. No other question requires special consideration.

The judgment and order should be affirmed, with costs.

O'BRIEN and HATCH, JJ., concur. VAN BRUNT, P. J., and INGRAHAM, J., dissent.