TOMLINSON and another, Appellants, vs. ASHLAND COUNTY, Respondent.

*May 28—November 4, 1919.*

*Counties: Contract to erect courthouse: Power of architect: Implied contract: Doing work under protest: Failure to procure architect's certificate: Right to recover: Presentation of claim: Interest: Delayed payments.*

1. Under a contract for the erection of a courthouse the plaintiffs were not bound to furnish at their own expense, as a part of their contract obligation, sand and labor for necessary inside and outside filling, where the plans and specifications failed to disclose these items and they were not within the

contemplation of the parties at the time of making of the agreement.

2. While the architects had the power to construe and define the intent and meaning of the plans and specifications made a part of the contract concerning all work within the contract, they had no power to construe the contract itself and determine what work was within or without the contract.

3. Where the insistence by the defendant county, through its building committee and architects, that the work in question should be done by the plaintiffs as part of their contract required the plaintiffs to proceed with the work as they did or to refuse to proceed at all, thereby subjecting themselves and the county to damages and delay, a situation was created under which there arose an implied obligation on the part of the county to pay for the work.

4. Failure of the architects, based on their mistaken view of the law, to give the certificates specified in the contract for the erection of the courthouse, is no bar to the contractors' right to recover.

5. Where a claim of the plaintiff contractors not intended to be rejected was properly a part of another claim with which it was mingled at the time the bill was presented, and the building committee of the defendant county rejected the entire bill, part of which should have been allowed, the claim not intended to be rejected cannot be defeated on the ground that it had never been properly presented to the county board for allowance.

6. Where the delay in issuing the final certificate of the architects and making final payment was not chargeable to any breach of the contract obligation on the part of the defendant county, the plaintiff contractors were not entitled to interest on the final and delayed payment on the contract price.

APPEAL from a judgment of the circuit court for Ashland county: G. N. RISJORD, Circuit Judge. *Reversed.*

On February 10, 1914, the county board of defendant by due resolution appointed a building committee and authorized the issue of bonds for the erection of a courthouse in the city of Ashland. February 21st a contract was duly made with architects Buemming of Milwaukee, Wisconsin, and Wildhagen of Ashland, by which, among other things, the said architects were required "to furnish complete plans

and specifications . . . in such shape that the owner may advertise for bids thereon for the erection of said courthouse."

Such prepared plans and specifications were submitted to bidders under a general advertisement or notice which contained the following provision: "All bids must be in strict accordance with the plans and specifications prepared by H. W. Buemming and Henry Wildhagen." The building was to be erected upon a square block, the surface of which sloped from the south to the north with a difference in level of eight feet. The exact position upon said lot had not been determined upon, however, at the time the bids were received.

The plaintiffs were residents of Ashland and familiar with the location of the block on which the building was proposed to be erected. Prior to their submitting their bid for the doing of certain of the work plaintiffs called the attention of the Ashland architect to the fact that the plans as prepared, particularly so far as related to the height of certain columns or piers in the same, could not be adjusted in accordance therewith to the actual slope of the ground, for if all the columns or piers were to be of the length as marked on the plans they could not all rest upon the surface. Thereupon a change was made in the plans indicating that certain of the columns or piers were to be of greater length than originally indicated, but no reference was made in such changed plan or notice of the difference in the elevation of the surface soil or that any filling of material in or around the building would be thereby rendered necessary.

Plaintiffs and other bidders discussed with the architects, prior to submitting bids, the question of whether or not they would be required, under the mason work, to haul in any ground or soil for the purpose of making any filling either within the walls of the building or outside them, and after such discussion and being informed by the architect that in his judgment the county would furnish the material for the

filling, at least for the outside, they made no provision in their bid for any expense for bringing material from the outside of the lot to raise the surface of the ground above its then level.

Plaintiffs submitted their bid, and attached to the bottom ·thereof was written as follows: "The above bid is based on the understanding that the excavated earth from the building will be sufficient to do all filling." This note was brought to the attention of at least one of the members of the building committee of the defendant and to the attention of the architect. It was detached, however, either at the time the bid was presented or just prior to the time when the contract was let to the plaintiffs.

A contract was made with the plaintiffs on June 9; 1914, the material parts of which are as follows:

"Art. I. The contractors shall and will provide all the materials and perform all the work for the entire structural steel and iron work, fire-proofing, cut-stone work, mason work, lathing and plastering, ornamental iron work, carpenter work, galvanized iron, tin, copper, and roofing work, and painting and glazing of and for a courthouse building to be built at Ashland, Wisconsin, as specified on pages 5 to 29, inclusive, of specifications and including also work described on sheet 'A,' herewith attached and made a part of this contract, all as shown on the drawings and described in the specifications prepared by H. W. Buemming, Henry Wildhagen, associated architects, which drawings and specifications are identified by the signatures of the parties hereto, and become hereby a part of this contract.

"Art. II. It is understood and agreed by and between the parties that the work included in this contract is to be done under the direction of the said architect, and that his decision as to the true construction and meaning of the drawings and specifications shall be final. . . .

"Art. III. No alterations shall be made in work except upon written order of the owner and the architect; the amount to be paid by the owner or allowed by the contractors by virtue of such alterations to be stated in said order.

Should the owner and contractors not agree as to amount to be paid or allowed, the work shall go on under the order required above, and in case of failure to agree the determination of said amount shall be referred to arbitration, as provided for in art. XII of this contract. . . .

"Art. VIII. The owner agrees to provide all labor and materials essential to the conduct of this work not included in this contract in such manner as not to delay its progress, and in the event of failure so to do, thereby causing loss to the contractors, agrees that it will reimburse the contractors for such loss. . . . Should the owner and contractors fail to agree as to the amount of loss comprehended in this article, the determination of the amount shall be referred to arbitration as provided in art. XII of this contract. . . . The final payment shall be made within thirty days after the completion and acceptance of the work included in this contract, and all payments shall be due when certificates for the same are issued."

The specifications referred to in and made a part of the contract contained the following provisions:

"*Grading:* The entire lot, which is 300 x 300 feet in size, is to be graded so as to bring the top grade of same one foot above the sidewalk grade of Second street, within a radius of twenty feet all around the outside walls of building. All soil from the excavations is to be left on the premises and leveled out as directed.

"The filling around the building is to be completed before November 1, 1914.

"*Excavations:* The entire top soil for the entire area of ground floor shall be plowed and scraped off down to solid clay. The entire area of ground floor is then to be filled in with clay, sand, or cinders, to the proper level, well tamped, and rolled down with a steam roller to a true and level surface, ready for the concrete foundation of ground floor.

"*General conditions:* The contractor for this work will be subject to the 'General Conditions' forming the preface of this specification, in so far as the same are applicable to this branch of the work. . . . He will be required to do all work belonging to his branch, whether mentioned in his respective specification or elsewhere. The county of *Ashland* will not be liable for any extra work unless the same shall first be

duly ordered in writing by the courthouse building commit-tee at an agreed price. . . . Any work or materials not di-rectly or indirectly noted in the specification or drawings, but necessary for the proper carrying out of the obvious in-tentions thereof, are to be understood as implied, and must be provided by the contractor.

"*Alterations:* The courthouse building committee re-serves the right to make any change in the plans and specifi-cations which it may deem necessary or desirable and the several contractors shall furnish the additional material and do the extra work necessitated by such changes at fair and reasonable prices, said price to be agreed upon by the court-house building committee and the said contractors respec-tively before the work is commenced. The county of *Ash-land* shall not be liable for any extra work, unless the same shall be duly ordered in writing by the said committee. If the changes herein mentioned shall diminish the amount of work to be performed or materials to be furnished, the amount of the same at a fair and reasonable value shall be deducted from the contract price.

"On or before the 5th day of each calendar month each contractor must deliver to said courthouse building com-mittee a written statement of the amount of his claims, if any, for such additional or extra work and material fur-nished during the previous month. The nondelivery of such bill or account at the stated time will be considered as an abandonment of any claims for the value of such work and as exonerating the county of *Ashland* from all liability relative thereto.

"*Architects and their duties:* H. W. Buemming, Milwau-kee, Wisconsin, and Henry Wildhagen, Ashland, Wiscon-sin, associated architects, are the architects and superinten-dents of this work for and in behalf of the county of *Ash-land*. Their duties consist in giving the true interpretation and meaning of the plans and specification, at the same time taking particular care that all work and materials shall be, in all respects, according to the said plans and specifica-tion. They have no authority to make any changes in the said plans and specification, nor to order any additional or extra work, that power being reserved to the courthouse building committee alone. (See 'Alterations.') They shall give any and all certificates that the contractor may

become entitled to from time to time, and shall settle, in conjunction with the courthouse building committee, all the deductions from or additions to the contract price which may grow out of any changes or alterations in the work. They shall also determine, in conjunction with the courthouse building committee, the damages which may accrue from any cause, and shall decide upon the fitness of all materials used and work done. The courthouse building committee and architects' opinions, certificates, reports, and decisions on all matters pertaining to the construction of this building shall be binding and conclusive."

After the contract was let the site of the proposed building was located in about the center of the block. Owing to the fact that the site selected had formerly been occupied by other buildings, there were old vaults, tank holes that had filled up, and cellars, etc.; thereupon the architect, with the knowledge and consent of the building committee, gave a so-called work order in writing to the plaintiffs to fill up such holes with sand. Plaintiffs did so, and, as the court found, 400 cubic yards of earth were required to comply with such order, and the reasonable value of it was $335.50. It was substantially completed during the month of July.

In addition to the supervision by the architects, the building committee employed a Mr. Foster to be constantly on the ground and keep account of the way in which the work was progressing and make daily reports thereof to the building committee and the architects. Foster kept account of the amount of work that was done and material furnished under such work order, and furnished his estimate or record thereof to the plaintiffs shortly after the 1st of August. On August 10th the plaintiffs presented a bill to the building committee which was as follows:

To extra concrete and excavating—

| | | |
|---|---|---|
| 82 yards concrete footings at $6...... | $492 00 | |
| 25 yards concrete piers at $12........ | 300 00 | |
| 59 yards concrete walls at $8......... | 472 00 | |
| 191 yards excavating for walls and trenches ..................... | 191 00 | $1,455 00 |

*Extra bill.*

To excavating old fills and hauling rubbish—

| | | |
|---|---|---|
| 671½ hours at 20c..................... | $134 30 | |
| 222½ hours at 22½c................. | 50 07 | |
| 7 hours at 15c................... | 1 05 | |
| 8 hours at 80c.................... | 6 40 | |
| 80 hours at 25c.................... | 20 00 | |
| 140 hours teams at 50c............. | 70 00 | |
| Liability insurance on $211.82 at $6.47. | 13 70 | |
| | $295 52 | |
| 10 per cent............. | 29 55 | |
| | | $325 07 |

| | | |
|---|---|---|
| Filling interior of building with sand— | | |
| 1,950 yards sand filling at 62½c........ | $1,218 75 | |
| J. F. Brindle, placing teams............ | 25 00 | |
| Sand tickets ...................... | 6 50 | |
| 42½ hours team towing at building at 50c | 21 25 | |
| Labor spreading sand................ | 107 87 | 1,379 37 |
| Labor at sand-pit stripping— | | |
| 140 hours at 22½c.................... | 31 50 | |
| 80 hours teams at 50c............... | 40 00 | |
| | | 71 50 |
| Total cost of filling basement.... | $1,450 87 | |
| 10 per cent............. | | 145 08 |
| | | $3,376 02 |

A dispute then arising as to whether or not the last items of such bills for filling interior of building should be allowed, the architects reported adversely thereto and were upheld by the building committee. Thereupon a new bill was submitted as of the same date of the first items, slightly modified, with the second one, and a certificate was issued by the architects September 9th and plaintiffs were paid for these two.

The plaintiffs finished their part of the work substantially about the last of October, except as to certain hardware and fixtures that were to be placed by them in the building but to be furnished by the county. Some delay arose in so furnishing such hardware and the plaintiffs were not entirely through until December, 1915, or early in January,

1916. The final certificates were given by the architects in January and plaintiffs received payment thereof.

Various proceedings were had before the county board with reference to the claims of the plaintiffs, and, upon the refusal of the county to pay the items hereinafter specified, separate appeals were taken to the circuit court and there the two claims were consolidated and tried as one case. The court found the facts substantially as above stated and also the following as to the several items:

(a) For 400 cubic yards of sand filling, $335.50; that it was required by and furnished under written order, and that $335.50 was a reasonable and proper amount. That it was included in but not specifically separated from the 1,950 cubic yards specified in the rejected items, and the fact that it was made under written order was not called to the attention of the architects, building committee, or county board until after this action was commenced; and that in refusing payment for the 1,950 yards they did not intend to refuse payment for the 400 yards, but, inasmuch as it had never been properly submitted, it could not now be allowed.

(b) Claim for sand brought by plaintiffs within the walls of the building to bring the level of the ground up to within six inches of the floor as laid, and amounting to $1,272.27. The court found this to be the reasonable value of the material furnished, and also found that the contract seemed to contemplate that the contractors should furnish this filling, and that the decision of the architects to that effect of the meaning of the plans and specifications was conclusive against the plaintiffs.

(c) Claim for sand or material used in filling in around outside the building to the amount of $2,120.35. The court found that this was the reasonable value of the material furnished. That under the contract the duty of furnishing it was imposed upon the contractors, and the determination of the architects to that effect was binding upon the plaintiffs. He also found with reference to these last two items of

filling that there was not sufficient. earth upon the block made by the excavations or otherwise to bring the grade up to that established by the plans and specifications, and that such fact was not in the minds of the architects when they drew the plans and specifications nor in the minds of the committee when the contract was let; that when the decision was made by the architects and the building committee to the effect that such filling was required of the plaintiffs by reason of the contract, plans, and specifications, the plaintiffs protested against such decision and asked for arbitration thereon, which request was never acted upon by the committee or the county board.

(d) Claim for interest as measure of damages for delay from October, 1915, to February, 1916. The court found $252.68 to be the amount of such interest, but that plaintiffs were not entitled to recover the same.

Upon the findings judgment was entered in favor of the defendant dismissing the action with costs, and from such judgment plaintiffs have appealed.

For the appellants there were briefs by *Sanborn, Lamoreux & Pray,* and oral argument by *Allan T. Pray* and *A. W. Sanborn,* all of Ashland.

*William F. Shea* of Ashland, for the respondent.

The following opinion was filed June 25, 1919:

ESCHWEILER, J. Seemingly the only obstacle found by the court below to prevent the allowance to the plaintiffs of the two items for inside and outside filling, of $1,272.27 and $2,120.35 respectively, was the conclusion he came to that under the contract and under the decision of the architects to the same effect, and which he held was controlling, the plaintiffs were bound to furnish this sand and labor for these two respective items at their own cost and as a part of their contract obligations.

The contract liability of plaintiffs was bound up with and measured by the plans and specifications by the express pro-

visions of the contract itself.   These plans and specifications had been made the foundation for the bids requested under the express terms of the advertisement and thereafter accepted.

These plans and specifications not only failed to disclose that such items were intended or provided for, but, as reasonably and generally construed, declared to the contrary. Nor is there to be found in any of the language of the contract or of the specifications, either in the provisions as to grading, filling, or in any of the general provisions quoted in the statement of facts, such terms as placed, either expressly or by implication, such conditions within the contract.   The plaintiffs were entitled to rely upon what was in effect represented by such plans and specifications. *Christie v. United States,* 237 U. S. 234, 242, 35 Sup. Ct. 565.

It is further apparent that it was not within the contemplation of the parties at the time of the making of the contract that what was covered by two such items was any part of that for which they were to be paid the contract price.

The power of the architects under the contract was unquestionably binding when deciding questions arising as to the meaning of the provisions of the plans and specifications concerning all work that was within the contract, but they were not given the power expressly, nor may we give it to them by implication, to either add to or take away from the contractual rights or liabilities of either party under the contract itself.

The power to construe and define the intent and meaning of plans and specifications made a part of a contract is one thing, and may properly be, as it was in this instance, left to arbiters selected by the parties; the power to construe the contract itself and to determine what is within and what without such contract is a different and independent question, and belongs primarily to the courts.   This distinction

was recognized in *First S. & T. Co. v. Milwaukee Co.* 158 Wis. 207, 237, 148 N. W. 22, 1093. See, also, *Ætna Ind. Co. v. Waters,* 110 Md. 673, 691, 73 Atl. 712; *Isaacs v. Dawson,* 70 App. Div. 232, 75 N. Y. Supp. 37; affirmed, 174 N. Y. 537, 66 N. E. 1100.

To give the latter power to those who may properly be and usually are vested with the first should rest upon express grant rather than upon mere implication. *Ruch v. York,* 233 Pa. St. 36, 52, 81 Atl. 891; *Mayor, etc. v. M. A. Talbott & Co.* 120 Md. 354, 363, 87 Atl. 941.

The insistence by defendant, through the building committee and the architects, that the work in question must be done by plaintiffs as a part of their entire contract, required the plaintiffs to either proceed with the work as they did or to refuse to proceed at all, thereby subjecting themselves and the county to great damage and delay, and was in effect compelling the plaintiffs to do that which they were not bound to do. Such situation and the work having been done by the plaintiffs under protest against just such a construction as was being given to the contract; the knowledge on the part of all concerned that the work was being so done and it having been done in good faith and a reasonable amount only having been charged for it—all these conditions created a situation under which there arose an implied obligation on the part of the county to pay for such work. 13 Corp. Jur. 245; *Molloy v. Liebe,* 102 L. T. Rep. N. s. 616.

The construction, therefore, by the architects of the questions involved as to the right of the plaintiffs to charge for and recover for these two items, being an attempted decision on their part on a matter that was beyond their jurisdiction, is not binding on the parties nor controlling on the court. *Shine v. Hagemeister R. Co.* 169 Wis. 343, 172 N. W. 750. And as is held in the case last cited, the failure on the part of the architects to give the certificate specified in the con-

tract for these two items, such refusal being based upon their mistaken view of .the law, is no bar to the plaintiffs' right to recover.

The item of $335.50 for 400 cubic yards of sand was disallowed by the circuit court on the ground that it had never been properly presented to the county board for allowance. Apparently a misunderstanding arose with reference to this item. These 400 cubic yards, with the 1,550 cubic yards covered in the first item above, which, we have seen, should have been allowed, were needed for filling inside the building. It was in exactly the same position under the contract as was the 1,550 yards, except that as to these 400 yards the architects and the building committee had recognized that much, at least, of the inside filling was proper as an extra and had given a written order therefor. This, however, did not deprive plaintiffs of whatever rights they might have with reference to it by virtue of its being necessarily a part of the entire inside filling. It is conceded that it is a reasonable, just, and honest claim and that it was not intended to have been rejected by the architects or the building committee. It can be and should be properly allowed on the same basis and as a part of the item of inside filling with which it was mingled at the time the bill for such inside filling was presented to the building committee and rejected, and should therefore be allowed. It is therefore not necessary to determine whether or not its presentation as such an extra claim under the written order was properly made or not.

The court below was right in disallowing the claim of $252.68 computed as interest from November 1, 1915, to February 1, 1916, on the final and delayed payment to plaintiffs on the contract price. The contract provided for the manner in which the plaintiffs were to receive their pay and the times therefor. We find nothing in the record which would properly support a finding that the delay, if any, in the issuing of the final certificate and the making of the final

payment was chargeable to any breach of the contract obligation on the part of the defendant. Some delay is inevitable between the finishing of the work and the issuing of the certificate for the same and such must be within the contemplation of the parties to such contracts.

It follows that the plaintiffs should be allowed judgment for the sum of the three items of $335.50, $1,272.27, and $2,120.35 respectively, aggregating $3,728.12, so disallowed by the court, together with interest thereon from the date of the filing of the claims with the county board.

*By the Court.*—Judgment reversed, and the cause remanded with direction to enter judgment for the plaintiffs in the sum of $3,728.12, with interest.

A motion for a rehearing was denied, with $25 costs, on November 4, 1919.