**PAT J. MURPHY, INC., Plaintiff,**

v.

**DRUMMOND DOLOMITE, INC., Defendant,**

v.

**AMERICAN EMPLOYERS INSURANCE COMPANY, a corporation, Cross-Defendant.**

**No. 60-C-191.**

United States District Court
E. D. Wisconsin.

March 7, 1963.

O. S. Hoebreckx, Milwaukee, Wis., for plaintiff, Grootemaat, Cook & Franke, Milwaukee, Wis., of counsel.

Malcolm K. Whyte and Victor M. Harding, Milwaukee, Wis., Robert L. Rohde, Sheboygan, Wis., for defendant, Whyte, Hirschboeck, Minahan, Harding & Harland, Milwaukee, Wis., Federer, Grote, Hesslink, Rohde & Neuses, Sheboygan, Wis., of counsel.

James P. Brody and Foley, Sammond & Lardner, Milwaukee, Wis., for cross-defendant.

GRUBB, District Judge.

This is an action by plaintiff, Pat J. Murphy, Inc. (hereinafter called the "contractor"), for damages for breach of contract with alternate claims for quantum meruit and for damages for misrepresentation. Defendant, Drummond Dolomite, Inc. (hereinafter called the "owner"), has cross-claimed against American Employers Insurance Company, the surety on the contractor's performance bond, and counterclaimed against the contractor for damages allegedly resulting from failure to complete performance under the contract.

The object of the contract was the construction of a haul road and related work to service the owner's quarry on Drummond Island, Michigan. The contract provided for differing rates of compensation for various classifications of earth to be excavated. In the performance of the work, the contractor encountered a certain hard material. The dispute between the parties centers on the classification of this material and the compensation for its excavation.

The parties have agreed to the severance and submission on stipulated facts of the following issues:

1. Choice of controlling law.

2. The scope of authority of the owner's engineer under the contract.

3. The applicability of the Wisconsin Standard Specifications for Road and Bridge Construction in the determination of the classification.

*1. Choice of Controlling Law.*

Jurisdiction in this case is based on diversity of citizenship. The court must follow Wisconsin conflict of laws rules in determining the law applicable to the contract and tort claims of the case. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Klaxon Company v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); 1A Moore, Federal Practice, § 0.311(1) (2d ed. 1961).

The contract was drawn and executed in Wisconsin between a Wisconsin corporation and a Delaware corporation having its business and executive office in Wisconsin, whose operations—the mining of dolomite rock—are conducted in Michigan. All construction work under

the contract was to be performed in Michigan. The center of the controversy involves a particular Michigan phenomenon, Michigan earth.

The terms of the contract do not reveal an express intention as to controlling law. Reference to compliance with Michigan statutes and ordinances in the performance of the work is a necessary incident to a contract for the construction of a road in Michigan. Application of the Wisconsin Standard Specifications for Road and Bridge Construction to matters of performance not otherwise specifically noted in the contract does not indicate an intent that the legal rights of the parties were to be determined under Wisconsin law.

The Wisconsin rule of conflict of laws with respect to contracts has recently been stated in Estate of Knippel, 7 Wis. 2d 335, at pages 341–342, 96 N.W.2d 514, at page 517 (1959), as follows:

" * * * With respect to various other types of contract, (other than antenuptial agreements) this court has held that the choice of law governing validity and interpretation is basically a question of the intention of the parties except where their intention is to commit a fraud on the law. In the absence of evidence to the contrary, the law of the place of making the contract is presumed to be intended unless the place of performance be different. In the latter instance there is a rebuttable presumption that the law of the place of performance controls. (Citations omitted.) * * * "

The court also noted the "grouping of contacts" or "center of gravity" standard for determining controlling law in a contractual transaction set forth in Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99, 50 A.L.R.2d 246 (1954).

Under the circumstances of this case, the presumption that the law of the place of performance, Michigan, controls has not been rebutted. Michigan also is the state having the most significant contacts with the matter in dispute.

The substantive rights of the parties under this contract must be determined under Michigan law. Cf. Lummus Company v. Commonwealth Oil Refining Co., 280 F.2d 915 (1st Cir., 1960), where the court construed the contract as indicating an intent of the parties as to controlling law. The contract in the instant case does not reveal an intention that either Wisconsin or Michigan law was to be controlling.

Under Wisconsin conflict of laws rules relating to tort claims, the place of the wrong controls the substantive rights of the parties. Wojciuk v. United States Rubber Co., 13 Wis. 2d 173, 108 N.W.2d 149 (1961); Haumschild v. Continental Casualty Co., 7 Wis. 2d 130, 95 N.W.2d 814 (1959). The place of the wrong is the state in which the last event necessary to make an actor liable takes place. In the case of loss occasioned by fraud, the place of wrong is where the loss is sustained, not where the fraudulent representations are made. Restatement of Conflict of Laws, Section 377, and see paragraph 4 of Note accompanying the section. An illustration of this rule defines the place of wrong as that state where a person parts with the possession of goods as a result of fraudulent misrepresentations.

The event which allegedly occasioned the contractor's loss, the unanticipated encounter with hard material, occurred in Michigan. Reduction in value of equipment and business losses substantially occurred in Michigan. The law of Michigan, therefore, controls the substantive rights of the parties in tort.

2. *Scope of Authority of the Owner's Engineer.*

Under the construction contract, the owner's engineer who had prepared the plans and specifications therefor was in complete control of field operations. Payments by the owner were to be based on the engineer's monthly estimates of work completed and materials furnished as computed and approved by said engineer. The engineer's determinations were made final by express provision of

the agreement in two areas only. These are as follows:

Paragraph 10 of the Contract:

"10. Contractor understands and agrees that Walter H. Knapp of Wisconsin, Inc., as owner's engineer, is in complete control of field operations, and that all work performed and materials furnished must be inspected, accepted and approved by said owner's engineer prior to payment therefor, and that the decision of owner's engineer shall be final with respect thereto. * * * "

Paragraph 2.b. of "Drawings and Specifications" under "General Conditions" of the Specifications which were incorporated into the contract by reference:

"b. Before submitting his proposal, each bidder shall carefully check the drawings and specifications, and should he find any uncertainty in the requirements, he shall report same to the Owners' Engineer in writing. The Owners' Engineer will make a ruling on each report and will notify all bidders as to his decisions. Should any conflict or any uncertainty be discovered after signing of the contract, it shall be called to the attention of the Owners' Engineer, and his decision in regard thereto shall be final and binding."

The contract specifies four categories of materials to be excavated in the road construction project: common excavation, solid or ledge rock, marsh, and outcropping or scattered rock and large boulders. Common excavation is identified by geographical location, estimated quantity, and as including boulders or rock fragments but excluding solid or ledge rock.

The contractor agreed to excavate the material designated as common excavation at a unit price of 42 cents per cubic yard. Shortly after construction was begun, the contractor encountered the hard material. At first he made informal, then formal demand for compensation for excavating this hard material at the solid or ledge rock rate of $1.75 per cubic yard. His demand was denied.

The question in this case concerning the scope of authority of the engineer is not limited to the authority to classify excavated materials according to the kinds specified in the contract. The issue is whether or not the engineer's decision as to the meaning of the term "common excavation" as used in the contract was intended to be conclusive upon the parties.

The quoted provisions of the agreement do not expressly authorize the engineer to render final and conclusive determinations as to the construction of all terms of the agreement. It has been held that conclusiveness of an engineer's determination as to factual classification of excavated material may arise by implication from the authority to certify performance as a condition for payment. Massman Const. Co. v. Lake Lotawana Ass'n, 240 Mo.App. 469, 210 S.W.2d 398 (1948). The binding decision of the engineer in the Massman case pertained to a factual classification of excavated material as shale or rock. It does not appear that there was a dispute, as in the instant case, as to what the parties meant when they used the terms "shale" or "rock" in the agreement.

It has also been held that authority to construe the obligations under the contract must rest on express rather than implied grant. Tomlinson v. Ashland County, 170 Wis. 58, 173 N.W. 300 (1919), and see 17 C.J.S. Contracts § 326, p. 765.

The grant of final authority as to any conflict or uncertainty discovered in the requirements of the drawings and specifications relates to the performance required of the contractor. There is no uncertainty in this case as to details of the road construction which the contractor was to perform, such as excavation to certain depth, filling, and grubbing. The dispute does not involve details of performance but relates to the intent

of the parties in using the term "common excavation." Did they intend thereby to describe all earth located within the geographical boundaries set forth in the contract except as to certain specifically excluded materials, thereby obligating the contractor to excavate all earth in this area at 42 cents per cubic yard? Final and binding determination of this question is not clearly granted under the authority to determine conflicts and disputes as to the requirements of the drawings and specifications. Ambiguities in the contract are to be construed against the party responsible for the use of the language. Nichols v. Seaks, 296 Mich. 154, 295 N.W. 596 (1941), and Gee v. Olson, 320 Mich. 274, 30 N.W.2d 867 (1948).

The conduct of the owner and engineer after encounter of the hard material was not consistent with the contention that the engineer had final and conclusive authority to construe the meaning of the term "common excavation" or, in fact, exercised final authority as provided under the contract in other respects. Initially the dispute involved only the classification of the hard material as common excavation or rock. The contractor contended that the rock excavation rate should be applied; the owner, not the engineer, determined that the common excavation rate would be paid. An official of the owner participated in directing field operations and the contractor's performance. This official approved estimates for payment computed by the engineer. Misunderstandings as to the location and extent of grubbing operations to be performed by the contractor, comparable to misunderstanding as to the term "common excavation," were resolved with the owner's participation and approval.

The provisions of the contract which are claimed to confer final authority on the engineer to construe the terms of the agreement do not grant such power clearly and expressly. The conduct of the owner and the engineer was not consistent with the grant of final and conclusive authority in these matters. For these reasons the contractor is not precluded from submitting the question of construction of the agreement to ascertain the intended meaning of the term "common excavation" for judicial determination.

3. *Applicability of the Wisconsin Standard Specifications for Road and Bridge Construction.*

 Paragraph 14 of the Specifications of the construction contract has the prefatory provision:

"The following detailed specifications will apply to various items of work necessary for the completed project. In general, all of the work is to be done in accordance with standard specifications of the State Highway Commission of Wisconsin, for Road and Bridge Construction, except as otherwise specifically noted."

The classifications of materials to be excavated are not specifically noted as not governed by the Wisconsin Standard Specifications. The definition of "common excavation" under the contract—by geographical location, estimated quantity, inclusion and exclusion of certain materials—is more general than the earth classifications of the Wisconsin Standard Specifications. For these reasons, the Wisconsin Standard Specifications are applicable to determine the meaning of the categories of materials to be excavated except to the extent that they may be inconsistent with the express language of the contract.

In accordance with the foregoing decision, it is the conclusion of the court that Michigan law is controlling in the action; that the engineer was not granted final and conclusive authority to construe the terms of the agreement; and that the Wisconsin Standard Specifications are applicable to the classification of excavated materials except to the extent that their provisions are inconsistent with the express definitions set forth in the agreement.

The court hereby adopts the stipulation of facts supplemented by the court's findings of fact as set forth above as its findings of fact on the foregoing issues. Conclusions of law are as set forth in the foregoing decision in accordance with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

The clerk is hereby directed to enter partial judgment for the plaintiff and against the defendant on the severed legal issues.